CHISHOLM, BOYD & WHITE CO. v. ANDERSON FOUNDRY & MACHINE WORKS et al.

(Circuit Court of Appeals, Seventh Circuit. May 14, 1903.)

No. 909.

1. PATENTS—ANTICIPATION—BRICK MACHINES.
    The White & Boyd patent, No. 429,296, for a brick machine, claim 10, which relates to mechanism for moving the plungers which causes the upper plunger to stop while pressure is still exerted by the lower plunger, the purpose being to secure greater uniformity in the density of the brick, was anticipated by the Brewis patent, No. 395,871.

2. SAME—INFRINGEMENT.
    The White patent, No. 455,374, for a brick machine, claim 17, covering a hopper capable of moving vertically, *held* not infringed, and claim 23 *held* void for anticipation by a prior patent to the same inventor.

3. SAME—ANTICIPATION.
    The White patent, No. 488,622, for a brick machine, claims 16, 19, and 20, are void for anticipation by the Andrus patent, No. 286,892.

Appeal from the Circuit Court of the United States for the District of Indiana.

For opinion below, see 115 Fed. 738.

In the suit below the appellant alleged infringement of three patents, owned by appellant, and relating to improvements in dry press brick machines. The patents in question are No. 429,296 granted B. C. White and James A. Boyd, June 3, 1890; No. 455,374 issued July. 7, 1891 to B. C. White; and No. 488,622 issued December 27, 1892 granted to B. C. White.

The particular claims of the above patents charged to be infringed are claim ten (10) of the patent of 1890; claims seventeen (17) and twenty-three (23) of the patent of 1891; and claims sixteen (16), nineteen (19) and twenty (20) of the patent of 1892. Claim ten (10) of the patent of 1890 above referred to reads as follows:

"The combination of a mold, upper and lower plungers, toggle-arms connected with both plungers and movable vertically at both ends with the plungers, a toggle-operating beam fulcrumed between its ends and connected with the central joint of the toggle, and a stationary stop or stops located in position to engage the upper plunger and limit the descent of the same, and thereby operating to determine the vertical position of the plungers within the mold at the time of greatest compression, substantially as described."

Figure two (2) of the drawing of the above patent will serve to show the element of construction alleged to be infringed by the appellees.

It is contended by appellees that patent No. 395,871, granted January 8, 1889 to J. J. Brewis is an anticipation of the novelty of any invention included in the tenth claim of the patent of 1890.

Figures seven (7) and eight (8) of the Brewis patent are illustrative of the elements of this patent and appear below:

Fig. 7.        Fig. 8.

"In Fig. 7 I have shown an adjustable grooved shelf for giving the two pressures on opposite sides of the brick as has been indicated; while in Fig. 8 I have shown an adjustable stop A, secured to the cross head R, which allows the upper plunger to enter the mold box a certain and pre-determined distance so as to give the necessary amount of pressure to the top of the brick until stop A strikes the top table and arrests the further downward movement of the upper plunger. The lower plunger is now raised by the straining of the toggles so as to exert pressure on the brick, and in this way first a top and then a bottom pressure is exerted on the brick."

"In a brick machine of the character decribed, the adjusting stop or bolt A secured to the cross head R, as described, whereby the downward movement of the plunger is arrested as set forth."

Claims seventeen (17) and twenty-three (23) of the patent of 1891 are for certain mechanism to secure to the operation of the machine the desired variable movements, and read as follows:

17. The combination, with a mold and reciprocating feed-box, of a hopper resting in contact with the feed-box, the part of said feed duct or hopper which is in immediate contact with the feed-box being movable freely toward and from the feed-box, whereby gravity tends to hold the said hopper in contact with the feed-box, substantially as described.

23. The combination, with a mold and stationary feed-hopper, of a recipro-cating feed-box, a mold-table provided with a flat guide-surface sustaining the feed-box, oscillating arms for actuating the feed-box, and connecting-rods uniting the feed-box to the said arms, said connecting-rods being joined to the oscillating arms and to the feed-box by pivotal connections constructed to rigidly hold the connecting-rods parallel with the feed-box, and means for separately adjusting the lengths of said connecting-rods, substantially as described.

Claims nineteen (19) and twenty (20) of the patent of 1892 are claims for mechanical design, their purpose being to concentrate in a supplemental mechanism certain operating parts of the main machine, and are set out here-in below:

19. A frame for a brick-press, comprising two parallel side plates provided upon their inner faces with guides for the vertically movable parts of the machine, and rigidly connected with each other, said plates extending down-wardly to the horizontal base or foundation on which the machine rests, and a separate frame for the driving gear of the machine secured against the outer surface of one of the side plates and also extending downwardly to the said base or foundation substantially as described.

20. A brick machine, comprising upper and lower plungers, a toggle for actuating the same, a crank-shaft for actuating said toggle, a main frame con-sisting of parallel vertical side plates provided on their inner faces with bear-ings for the vertically movable parts of the machine, and provided with bear-ings for said crank-shaft, a gear wheel attached to the crank-shaft outside of one of the frame plates, a driving gear embracing a gear-pinion engaged with said gear-wheel on the crank-shaft, and a separate frame for said driv-ing gear secured to the outer surface of the main frame, substantially as de-scribed.

Charles K. Offield, for appellant.

E. E. Wood and W. R. Wood, for appellee.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

After the foregoing statement of facts, GROSSCUP, Circuit Judge, delivered the opinion of the Court.

We shall first deal with patent No. 429,296 and its tenth claim, that being the one which is infringed, according to the averments of the bill. The purpose of the mechanism described in this patent is to bring about such a movement of the upper and lower plungers, that

the upper plunger will come to a stop, while the lower plunger continues to move, thus exerting pressure from below upon the clay, the upper plunger acting only as a resistant. It is said, that in this way, there is obtained greater uniformity in the density of the brick manufactured. Excepting the stop, whereby the upper plunger's motion is arrested before the toggle governing the lower plunger's movement is entirely straightened out, the mechanism bringing this about is admittedly old.

In our judgment, the mechanism, including the stop, is substantially anticipated in Brewis patent No. 395,871. The only difference between the combinations is, that in appellants' patent, the stop is placed on the table, while in the Brewis patent, it is inserted in the plunger. In both cases the function of the stop is the same. Doubtless the transfer from the plunger to the table is attended with advantage, such as the prevention of mud clogs, but this is incidental merely, and does not seem to us to rise to the plane of patentable invention. It would have been obvious to any mechanic who already knew the advantage of getting pressure from below, and was seeking to get rid of the incidental disadvantage of the mud clogs.

An effort is made to escape the Brewis patent as an anticipation on the score that appellants' invention was conceived prior to the filing of the Brewis application. This claim, to be made effective, must be proven with reasonable certainty. No such proof exists in the case. Taking appellants' testimony on this point at its best, and it leaves us in grave doubt respecting the claim thus made.

We come now to patent No. 455,374. The novelty here claimed is that it secures to the hopper, from which the clay is formed, the condition of being a float. This is brought about by means of a telescoping mechanism, whereby the hopper is kept to its place laterally, while allowed to rise or fall vertically; and claim seventeen is designed to cover these mechanical means.

But appellee does not employ this telescoping mechanism. In appellees' mechanism, the hopper—following the Andrus patent No. 286,892—is fastened to a side bar by means of a screw. True, appellants insist that in the Andrus mechanism the screw was intended to be kept closed, while in appellees' mechanism the screw can be left loose, whereby having motion through a slot, the hopper will obtain vertical motion without affecting its horizontal motion. But it is not shown to our satisfaction that appellees purposely, and as a part of the operation of their machines, leave the screw loose. Nor would such fact, if true, constitute appellees' mechanism an infringement of appellants'. The appellant has no patent on the mere fact that its hopper floats; its patent is confined to the mechanism that brings about or controls such float; and as we have seen, the mechanical means employed in the patent are, in this respect, distinctly differentiated.

Respecting claim twenty-three of the same patent-covering mechanism that gives to the guides feeding the machine, an oscillating motion, vertical but not lateral, it is enough to say that this is clearly embodied in the previous patent to White not sued upon in this case.

Respecting claim sixteen of patent No. 488,622—covering the use

of a wood front in the feed box—the proof satisfies us that machines built previously under the Andrus patent of 1895, had such wood fronts.

Claims nineteen and twenty of the same patent are meant to cover the conception of concentrating into the supplementary machine—where the power is applied—all the bearings of the whole machine, rather than have such bearings divided between the supplementary and the main machine. The advantage is that it enables the machine to be taken apart for the purpose of transportation. This, at most, is mechanical design, and is in our judgment, anticipated in the Andrus invention.

The decree of the Circuit Court is affirmed.